IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEL PRENDERGAST, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.  07-cv-06749 |
| KOHL'S DEPARTMENT STORES, INC. | ) ) ) | |
| Defendant. | ) | |

### DEFENDANT, KOHL'S DEPARTMENT STORES, INC.'S STATEMENT OF MATERIAL FACTS

In accordance with Local Rule 56.1(a), Defendant, Kohl's Department Stores, Inc., by and through its attorneys, Segal McCambridge Singer & Mahoney, Ltd., respectfully submits the following Statement of Undisputed Material Facts:

### I.     THE PARTIES

1. Plaintiff Carmel Prendergast was at the time of the incident complained of and at the time the Complaint at Law was filed, and at all other relevant times, a citizen of the State of Illinois. *See* Exhibit A, Notice of Removal.

2. Defendant Kohl's Department Stores, Inc. was at the time of the incident complained of and at the time the Complaint at Law was filed, and at all other relevant times, a Delaware Corporation with its principal place of business in the State of Wisconsin. *See* Exhibit A, Notice of Removal.

### II.    JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 on the basis that there is complete diversity between the parties and the amount in controversy exceeds seventy-five

thousand dollars ($75,000) exclusive of costs and interests. *See* Exhibit A, Notice of Removal.

### III. <u>VENUE</u>

4. Venue is proper in this Court because the incident complained of occurred in the Northern District of Illinois. *See* Exhibit B, Plaintiff's Complaint.

### IV. <u>MATERIAL FACTS</u>

5. This premises liability lawsuit involves an alleged slip and fall by Plaintiff Carmel Prendergast on the sidewalk in front of the Kohl's store located at 3 Orland Park Place, Orland Park, Illinois on November 17, 2005. *See* Exhibit B, Plaintiff's Complaint, at para. 6.

6. Plaintiff Carmel Prendergast and her husband drove to Kohl's Orland Park store to go shopping around 12:45 p.m. *See* Exhibit C, Plaintiff's Deposition, at 104:7-13.

7. On the date of the incident, it was a clear and sunny afternoon. *See* Exhibit C, Plaintiff's Deposition, at 107:15.

8. Plaintiff was wearing jeans, a cotton shirt, a jacket, and rubber soled tennis shoes with tread (brand: SAS, purchased within the previous year). *See* Exhibit C, Plaintiff's Deposition, at 105-107.

9. Plaintiff's husband dropped her off at the curb directly in front of the store, and then drove away to go park the car in the parking lot. *See* Exhibit C, Plaintiff's Deposition, at 92:15-24; 93:1-5.

10. Plaintiff is unclear whether she stepped first onto the pavement or the curb as she exited her vehicle. *See* Exhibit C, Plaintiff's Deposition, at 93:16-20.

11. Plaintiff testified that she had a clear view of the area in front of her as she exited her vehicle and approached the sidewalk in front of the store. *See* Exhibit C, Plaintiff's Deposition, at 94:10-12.

12.     As Plaintiff stepped out of the car, she admittedly noticed the "rough patch of cement" on the sidewalk in front of her. *See* Exhibit C, Plaintiff's Deposition, at 98:6-14.

13.     Plaintiff repeatedly described the circular patch as "plainly visible." *See* Exhibit C, Plaintiff's Deposition, at 112:14-16; 117:2; 143:23.

14.     Plaintiff described the area where she fell as a "pretty big" round "patch" of cement (tan, brown and white in color), several feet wide in diameter, and coarse/rough to the touch. *See* Exhibit C, Plaintiff's Deposition, at 95:3; 96:4-7; 112:14-16; 117:2; 143:23.

15.     The concrete circle area was parallel to the curb, but Plaintiff could not estimate how far it was from the curb. *See* Exhibit C, Plaintiff's Deposition, at 100:5-22.

16.     Plaintiff also testified that there was a crack in the cement that extended from the curb to the front door of the store. *See* Exhibit C, Plaintiff's Deposition, at 96:20-23.

17.     However, Plaintiff testified that the "rough" circle was "the only part [of the cement] I tripped on." *See* Exhibit C, Plaintiff's Deposition, at 97:4-8.

18.     Plaintiff testified that she "always" looks at the ground to see where she's going. *See* Exhibit C, Plaintiff's Deposition, at 94:13-15; 109:2-10.

19.     Plaintiff also testified, repeatedly, that she was watching where she was going on the day of the incident and that nothing obstructed her view as she exited her vehicle. *See* Exhibit C, Plaintiff's Deposition, at 108-10.

20.     She was not distracted by anything as she approached the sidewalk, nor was she forgetful. *See* Exhibit C, Plaintiff's Deposition, at 109-10.

21.     Despite clearly seeing the circular patched when she exited her vehicle, she proceeded to walk directly across it. *See* Exhibit C, Plaintiff's Deposition, at 98:6-14.

22.     Plaintiff claims she took one or two steps, possibly three, and then caught the

bottom of her rubber-soled tennis shoe on the "rough" patch of cement. *See* Exhibit C, Plaintiff's Deposition, at 111:20-24; 112:1-9.

23. She did not actually see where her foot "caught," but *assumed* that it caught on the rough area because that is where she landed. Exhibit C, Plaintiff's Deposition, at 113-14.

24. Plaintiff admits that she did not see what caused her to fall. *See* Exhibit C, Plaintiff's Deposition, at 112:4-6.

25. When asked about the basis of her assumption that it was the patch of cement that caused her to fall, Plaintiff was only able to testify that "if the patch hadn't been there I don't think I would have fallen." *See* Exhibit C, Plaintiff's Deposition, at 113:24; 114:1.

26. She also testified that her husband was unsure if he saw the actual fall. *See* Exhibit C, Plaintiff's Deposition, at 125:20-22.

27. Plaintiff could not testify as to what it felt like when her foot hit the "rough" area. *See* Exhibit C, Plaintiff's Deposition, at 114:18-21.

28. Plaintiff testified that after her fall, she reached back and touched the cement area. *See* Exhibit C, Plaintiff's Deposition, at 98:24; 99:1-3.

29. When asked whether the rough area felt like sandpaper, Plaintiff responded "Sandpaper is actually pretty smooth, the cement was much rougher!" *See* Exhibit C, Plaintiff's Deposition, at 98:24; 99:1-3.

30. However, Plaintiff also testified that she did not touch the area of cement on the day she fell. *See* Exhibit C, Plaintiff's Deposition, at 115:1-3.

31. When asked if she went back at a later date to observe the area, Plaintiff testified that she did, but she never exited her vehicle. *See* Exhibit C, Plaintiff's Deposition, at 165:15-18.

32. Plaintiff confirmed that the pavement was level, not raised or uneven. *See* Exhibit

4

C, Plaintiff's Deposition, at 98:18-19; 112:12.

33. Darryl Smith was the Kohl's Manager on Duty at the time of the incident. *See* Exhibit D, Darryl Smith Deposition, at 15-16.

34. He arrived at the scene with another Kohl's Manager named Beth, and the two of them completed a Kohl's incident report and called the paramedics. *See* Exhibit D, Darryl Smith Deposition, at 17-18.

35. Mr. Smith photographed the scene after Plaintiff's fall. *See* Exhibit D, Darryl Smith Deposition, at 23-24.

36. Based on his observance of the area, Mr. Smith testified that there was nothing "noteworthy" about the cement area and that no defect existed in it. *See* Exhibit D, Darryl Smith Deposition, at 18:11-14.

37. Mr. Smith confirmed that there was no unevenness or elevation difference in the concrete area. *See* Exhibit D, Darryl Smith Deposition, at 38:7-11; 57:17-21.

38. When Mr. Smith touched the concrete area, he recalled that "everything was intact and nothing was frayed or jarred that someone could get snagged on or to make someone fall." *See* Exhibit D, Darryl Smith Deposition, at 58:6-8

39. When asked about conversations he had while at the scene of the incident, Mr. Smith testified that a witness approached him at the scene and reported that Plaintiff "tripped over her own feet…" *See* Exhibit D, Darryl Smith Deposition, at 19:11-12.

40. Mr. Smith testified that prior to Ms. Prendergast's fall, he had numerous occasions to observe the concrete area where Plaintiff claims to have fallen. *See* Exhibit D, Darryl Smith Deposition, at 54:23-24; 55:1-3.

41. Mr. Smith observed the area each day as he entered the store. *See* Exhibit D,

Darryl Smith Deposition, at 55:4-7.

42. Mr. Smith observed the area again each time he exited the store. *See* Exhibit D, Darryl Smith Deposition, at 55:5-11.

43. Mr. Smith sometimes had occasion to observe the area three times in a single day when he would be required to go out front of the store as a part of his job duties. *See* Exhibit D, Darryl Smith Deposition, at 55:12-16.

44. Mr. Smith testified that at no point during any of his trips outside the store where he had occasion to view the concrete area did he ever believe a dangerous condition existed. *See* Exhibit D, Darryl Smith Deposition, at 55:17-21.

45. Mr. Smith also testified that if he had believed there was a dangerous condition, he would have taken action and rectified the situation. *See* Exhibit D, Darryl Smith Deposition, at 56:1-2.

46. According to Mr. Smith's testimony, prior to Ms. Prendergast's fall, he was unaware of any other customer complaints regarding the cement area in front of the store. *See* Exhibit D, Darryl Smith Deposition, at 34:7-18.

47. Additionally, he was unaware of any employee complaints regarding the cement area in front of the store. *See* Exhibit D, Darryl Smith Deposition, at 34:18-22.

48. Mr. Smith testified that since Ms. Prendergast's fall, thousands of customers have traversed the concrete area in front of the store. *See* Exhibit D, Darryl Smith Deposition, at 59:1.

49. There has not been a single complaint from any customer regarding the concrete area since Ms. Prendergast's fall. *See* Exhibit D, Darryl Smith Deposition, at 59:2-5.

50. Similarly, there has not been a single complaint from any employee regarding the concrete area since Ms. Prendergast's fall. *See* Exhibit D, Darryl Smith Deposition, at 59:6-9.

51.  Photos of the concrete area were also produced during discovery and accurately depict the concrete area as it existed at the time of the incident. *See* Exhibit E, Photographs.

52.  At Palos Community Hospital, a series of x-rays were taken, which showed no fractures or dislocations, and Mrs. Prendergast was discharged that same afternoon. *See* Exhibit C, Plaintiff's Deposition, at 135:18-23.

Respectfully submitted,

Segal McCambridge Singer & Mahoney, Ltd.

By:/s/ Nancy S. Woodworth, Esq.
    Nancy S. Woodworth, #6288723
    One of the Attorneys for Defendant,
    Kohl's Department Stores, Inc.

Steven A. Hart, Esq. #6211008
Nancy S. Woodworth, Esq. #6288723
SEGAL MCCAMBRIDGE SINGER & MAHONEY, LTD.
Sears Tower – Suite 5500
233 S. Wacker Drive
Chicago, IL 60606
(312) 645-7800
(312) 645-7711